### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KARASSA LATONYA STEELE** | * | |
| | * | |
| v. | * | **Civil Case No. MJG-15-1725** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\***

### REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix).  I have considered the parties' cross-motions for summary judgment.  [ECF Nos. 13, 14].  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2014).  This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  For the reasons set forth below, I recommend that the Court deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis in accordance with this Report and Recommendations.

Ms. Steele filed an application for Supplemental Security Income ("SSI") on November 16, 2011.  (Tr. 158-63).  Her application was denied initially on December 21, 2011, and on reconsideration on March 19, 2012.  (Tr. 87-90, 94-95).  An Administrative Law Judge ("ALJ") held a hearing on August 23, 2013, at which Ms. Steele was represented by counsel.  (Tr. 39-68). Following the hearing, the ALJ determined that Ms. Steele was not disabled within the meaning of the Social Security Act during the relevant time frame.  (Tr. 23-38).  The Appeals Council denied Ms. Steele's request for review, (Tr. 6-11), so the ALJ's decision constitutes the final,

reviewable decision of the Agency.

The ALJ found that Ms. Steele suffered from the severe impairments of bipolar disorder and anxiety disorder.  (Tr. 28).  Despite these impairments, the ALJ determined that Ms. Steele retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can carry out simple tasks in two hour increments; have occasional interaction with coworkers and supervisors, but only superficial contact with the general public; and adapt to simple changes in a routine work setting.

(Tr. 30).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Steele could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled.  (Tr. 33-34).

Ms. Steele disagrees.  She raises three primary arguments on appeal: 1) that the ALJ failed to properly weigh medical evidence; 2) that the ALJ failed to properly evaluate her credibility; and 3) that the ALJ relied on flawed VE testimony pursuant to the Fourth Circuit's ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  While Ms. Steele's first two arguments lack merit, I agree that the hypothetical question the ALJ posed to the VE was deficient under *Mascio*, and recommend that the Court remand the case to the Commissioner for further analysis pursuant to its holdings.  In recommending remand, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Steele is not entitled to benefits is correct or incorrect.

Turning first to Ms. Steele's unsuccessful arguments, she contends that the ALJ failed to properly weigh medical evidence in reaching her decision, particularly the opinion of Ms. Steele's treating psychiatrist, Dr. Saeed.  Ms. Steele contends that the ALJ erred in not assigning controlling weight to Dr. Saeed's opinion as a treating physician.  Social Security regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of [a

claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2). However, if a treating source's medical opinion is not assigned controlling weight, the ALJ should consider the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship, including its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c).

In the instant case, Dr. Saeed opined that Ms. Steele had marked limitations in understanding and memory, sustained concentration and persistence, and social interactions and adaptation. (Tr. 32). The ALJ assigned Dr. Saeed's opinion "little weight" because "it is not supported by the record evidence as a whole as discussed herein. *Id.* The record simply does not support that the claimant has marked limitations in the areas mentioned by Dr. Saeed." *Id.* The ALJ also noted Dr. Saeed's role as a treating psychiatrist from August of 2011 through June of 2013 in weighing his opinion. *Id.*

Reviewing the remainder of the ALJ's discussion, the ALJ cited evidence that Ms. Steele has had "psychological problems since childhood, but never got an Individualized Education plan because her mother was an addict." *Id.* She also noted Ms. Steele's testimony that she stayed home when she was young to help raise her mother's children, but was nevertheless able to complete school through the 11th grade. *Id.* In addition, the ALJ cited the fact that Ms. Steele is the primary caretaker for her four children. *Id.* Based on this evidence, the ALJ stated, "Accordingly, I find that while it appears the claimant had a difficult childhood, and a possibly difficult personal situation currently, the record evidence as a whole does not show that she has

3

debilitating mental limitations."[1]

The analysis of Dr. Saeed's opinion was proper under Social Security regulations.  The ALJ found that Dr. Saeed's opinion should not be given controlling weight because it was inconsistent with other substantial evidence in the record, including Ms. Steele's ability to care for her four children.  The ALJ also considered relevant factors in assigning weight to Dr. Saeed's opinion, including the length of his treatment relationship with Ms. Steele, his specialty as a psychiatrist, and the consistency of his opinion with the other record evidence.  This analysis comports with the Social Security regulations outlined above.  Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ.  *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Here, the ALJ adequately supported her findings regarding Dr. Saeed's opinion with substantial evidence.

Ms. Steele next argues that the ALJ failed to properly evaluate her credibility.  Specifically, she contends that the ALJ "failed to make an explicit finding as to how the evidence contradicted any of Ms. Steele's testimony or other statements in the record."  Pl. Mem. at 12.  As discussed above, the ALJ cited the fact that Ms. Steele is able to function as the primary caretaker to her four children in finding that her limitations are not as severe as alleged.  (Tr. 31-

---

[1] Ultimately, the ALJ gave significant weight to the opinions of the State agency psychological consultants, initially and on reconsideration, who opined that Ms. Steele has a mild limitation in activities of daily living; moderate limitation in social functioning; moderate limitation in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 73-76, 82-84).  In addition, the State agency consultants stated that Ms. Steele had difficulty with emotion and behavior at times, could become verbally aggressive, and would not "be a good candidate to interact with the public."  *Id.*; (Tr. 32).  The ALJ found that the opinions of the State agency psychological consultants were "generally consistent with the record evidence as a whole. . . ."  (Tr. 32).

32).  The ALJ noted that although Ms. Steele initially testified that she "cannot do anything" for her children, she later testified that she helps them get ready for school and acknowledged that she has no physical problems.  (Tr. 31).  In addition, the ALJ cited the fact that Ms. Steele has not been hospitalized for her psychological impairments since 2007 and that she was able to cease her self-reported heavy alcohol consumption "cold turkey."  *Id.*  The ALJ also noted that Ms. Steele's Global Assessment of Functioning ("GAF") score increased over time and with treatment, that she denied homicidal and suicidal ideations even during periods when she otherwise described feeling withdrawn, and that treating sources reported that she was alert, oriented, and had goal-directed thoughts.  (Tr. 31-32).  Thus, contrary to Ms. Steele's argument, the ALJ made specific findings of how her testimony contradicted the record evidence, and supported her findings with substantial evidence.

Turning to Ms. Steele's successful argument, she contends that the hypothetical question the ALJ posed to the VE did not adequately account for her finding at step three that Ms. Steele has a moderate limitation in maintaining concentration, persistence, or pace, pursuant to the Fourth Circuit's holdings in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace.  *Id.* at 638.  At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Listings 12.00 *et. seq.*, pertain to mental impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  Each listing therein[2] consists of:  (1) a brief statement describing its subject disorder; (2)

---

[2] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

"paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920(a)(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence,

or pace.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work,[3] despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38.  The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."  *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted).  In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*  Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary.  *Id.*

In the instant case, the ALJ found Ms. Steele to have moderate limitations in maintaining concentration, persistence, or pace at step three of the sequential evaluation.  (Tr. 29).  In making this finding, the ALJ cited Ms. Steele's reports that she has difficulty with "talking, memory, completing tasks, concentrating, understanding, following instructions and getting along with others."  (Tr. 29).  However, the ALJ also noted that there were no records indicating that Ms.

---

[3] The hypothetical that the ALJ posed to the VE in *Mascio* did not actually limit the claimant to unskilled work, and thus did not match the ALJ's RFC assessment.  However, the VE indicated that all of the jobs cited in response to the hypothetical involved "unskilled work" such that, in effect, the hypothetical matched the ALJ's RFC assessment.

Steele exhibits specific thought disorders or cognitive deficits, and that Ms. Steele presented generally responsive and coherent testimony at her hearing. *Id.* In her RFC assessment, the ALJ found that Ms. Steele was limited to carrying out "simple tasks in two hour increments." (Tr. 30).

Here, as in *Mascio*, the ALJ did not explain how the restriction of Ms. Steele's RFC to "simple tasks in two hour increments" accounts for the finding of "moderate difficulties" in concentration, persistence, or pace. The Fourth Circuit was clear that restriction to simple, routine, and repetitive tasks does not adequately address a claimant's ability to stay on task. *Mascio*, 780 F.3d at 638. While the ALJ also includes a limitation to performing tasks in two hour increments, this limitation does not account for any breaks in addition to those encompassed by a normal workday. *See* SSR 96-9p (noting that a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks). Thus, the restriction to working for two-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation. In light of this inadequacy, I recommend remand of the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 14];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 13];

3. the Court REVERSE IN PART due to inadequate analysis the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court REMAND this case for further proceedings in accordance with this opinion; and

5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  April 11, 2016                                          _____/s/_____

                                                                                Stephanie A. Gallagher
                                                                                United States Magistrate Judge